# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS C. DINWIDDIE,<br><br>   Plaintiff,<br><br>   v.<br><br>WASTE MANAGEMENT, INC., DON JOHNSON, and USA WASTE OF CALIFORNIA, INC.,<br><br>   Defendants. | 1:11-cv-01874 LJO GSA<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS DON JOHNSON AND USA WASTE OF CALIFORNIA, INC.'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>(Document 36) |

*Procedural Background*

On November 3, 2011, Plaintiff Curtis C. Dinwiddie filed a complaint with this Court asserting numerous federal and state claims related to his employment with Defendant Waste Management, Inc., including claims of race discrimination, retaliation, hostile work environment, failure to prevent harassment and violation of public policy. He sought equitable and injunctive relief, compensatory and special damages, punitive damages, attorneys' fees and costs, and other relief. (Doc. 2.)

On January 12, 2012, Defendant Don Johnson filed a Motion to Dismiss the seventh, eighth and eleventh causes of action. (Doc. 14.)

1

On February 6, 2012, Plaintiff filed a First Amended Complaint ("FAC"), again asserting numerous federal and state claims related to his employment with Defendant Waste Management, Inc., including claims of race discrimination, retaliation, hostile work environment, failure to prevent harassment and violation of public policy.  He again sought equitable and injunctive relief, compensatory and special damages, punitive damages, attorneys' fees and costs, and other relief.  (Doc. 17.)

On February 21, 2012, Defendant Johnson filed an answer to the FAC.  (Doc. 20.)

On March 19, 2012, District Judge Lawrence J. O'Neill adopted a stipulation entered into by Plaintiff and Defendant Johnson wherein named Defendant Waste Management, Inc., was dismissed with prejudice, and wherein Plaintiff was permitted to file a Second Amended Complaint ("SAC") naming USA Waste of California, Inc., as a defendant.  (Doc. 22.)

Plaintiff's SAC was filed on March 21, 2012.  (Doc. 25.)  On March 30, 2012, Defendant USA Waste of California, Inc. filed its answer to the SAC.  (Doc. 26.)

On May 23, 2012, this Court issued its Amended Scheduling Conference Order setting discovery deadlines and relevant hearing and trial dates.  (Doc. 32.)

Thereafter, on October 3, 2012, Defendants Don Johnson and USA Waste of California, Inc. ("Defendants") filed a Motion to Enforce Settlement Agreement and Enter Judgment Thereon.  (Doc. 36.)  The undersigned continued the hearing on the motion from November 2, 2012, to November 16, 2012.  (Doc. 37.)

On November 6, 2012, Defendants filed notice that Plaintiff had not filed an opposition to the motion.  (Doc. 38.)

On November 7, 2012, the undersigned took the hearing on the motion off calendar and the matter was deemed submitted pursuant to Local Rule 230(g).  It was noted that an opposition to the motion had not been filed.  (*See* Doc. 39.)

Shortly after the Court took the hearing off calendar and the matter was submitted, Plaintiff filed an opposition to Defendants' motion.  (Doc. 40.)  However, the opposition was

untimely ¹ and thus stricken pursuant to signed minute order of November 7, 2012. (*See* Doc. 41.)

### *Applicable Legal Standards*

"[I]t is [] well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it." *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978) (citations omitted). "[A] motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract," and "'[a]n action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court.'" *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (internal citations omitted). Accordingly, the court may hear evidence and make factual determinations. *See Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996).

"[I]f an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is comparatively insubstantial." *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535 (4th Cir. 2002) (internal citations & quotations omitted). "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation;" this power "has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing." *Kukla v. National Distillers Products Co.*, 483 F.2d 619, 621 (6th Cir. 1973) (citations omitted). Disputes concerning a settlement agreement are governed by applicable state contract law, whether the underlying claim is state or federal. 3 Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (2012) Pretrial Conferences and Settlement Procedures, ¶15: 143, p. 15-62.

---

¹Because the hearing on the motion was set for November 16, 2012, any opposition to the motion was to be filed no later than fourteen days prior t the hearing, or no later than November 2, 2012. *See* Local Rule 230(c).

*Discussion*

**The Parties' Positions Regarding Settlement**

Defendants seek to enforce a settlement reached with Plaintiff following mediation before the Honorable William Cahill (ret.) at JAMS on July 12, 2012. More particularly, the parties entered into an agreement, whereby in exchange for the sum of $15,000.00, Plaintiff would settle and release all claims against Defendants. (Doc. 36-1 at 3; Doc. 36-3, Ex. B.)

The following day, July 13, 2012, Defendants sought information via an email request regarding the allocation of the $15,000.00 to be paid to Plaintiff, including attorney's fees, and those amounts applied to wages versus emotional distress damages. (Doc. 36-1 at 4-5; Doc. 36-3, Ex. C.)

On July 18, 2012, after receiving no response, Defendant sent another email requesting the same information so it "could begin processing the settlement checks." (Doc. 36-1 at 5; Doc. 36-3, Ex. D.) That same day, Plaintiff responded via letter. Specifically, Plaintiff revoked the Stipulation for Settlement executed July 12, 2012, "[p]ursuant to the Older Workers Benefit Protection Act (OWBPA)." (Doc. 36-1 at 5; Doc. 36-3, Ex. E.)

On July 19, 2012, Defendants responded in writing, and provided authority in support of their position that Plaintiff could not revoke under the OWBPA, that the revocation was ineffective and that the settlement reached "remained fully binding and enforceable." (Doc. 36-1 at 5; Doc. 36-3, Ex. F.)

After receiving no response to their communication of July 19, Defendants wrote again on August 2, 2012, expressly offering to perform their obligations pursuant to the settlement agreement, and tendering the sum of $15,000.00 to Plaintiff and his attorneys. (Doc. 36-1 at 5-6; Doc. 36-3, Ex. G.)

On August 7, 2012, Plaintiff responded to Defendants' tender and offer by stating that by virtue of its July 13, 2012, correspondence, Defendants had "revoked the prior Stipulation and Settlement by making a new and different offer, which Plaintiff did not accept." (Doc. 36-1 at 6;

Doc. 36-3, Ex. H.)

On August 21, 2012, Defendants again provided detailed correspondence, "explaining and providing authorities as to why Plaintiff's new position was wholly unsustainable, both legally or factually." (Doc. 36-1 at 6; Doc. 36-3, Ex. I.)

After receiving no reply, Defendants filed the instant motion on October 3, 2012.

### The Stipulation For Settlement Executed July 12, 2012

The Stipulation for Settlement was executed July 12, 2012, following a day-long mediation before retired judge William J. Cahill. Defendant USA Waste of California, Inc. agreed to pay Plaintiff Curtis Dinwiddie and his attorneys Moore & Moore the sum of $15,000.00 in exchange for a "release and discharge of any and all claims and causes of action arising out of the events or incidents referred to in the pleadings in this action." The payment by Defendant to Plaintiff was to "fully and forever discharge and release all claims" and Plaintiff agreed to "sign and deliver to defendants a standard form of Dismissal with Prejudice of the action." Plaintiff was to "protect, defend and indemnify the defendants . . . against any and all liens, subrogation claims and other rights that may be asserted by any person against the amount paid in settlement." Each party agreed that its counsel had "fully explained to his/her client(s) the legal effect of this agreement and of the Release and Dismissal with Prejudice" and that "each attorney represents that his/her client(s) has freely consented to and authorized this agreement." The parties agreed that payment was to be made by August 10, 2012, and that the agreement was "binding and may be enforced by a motion . . . or by any other procedure permitted by law in the applicable state or federal court." The agreement was signed by Plaintiff Curtis Dinwiddie and his legal representative, Kojo Moore, as well as Ronald J. Holland and Babak Yousefzadeh with Sheppard Mullin Richter et al., counsel for Defendants, Ronald J. Holland on behalf of Don Johnson, and Christina M. [illegible] on behalf of USA Waste of California. (*See* Doc. 36-3, Ex. B.)

**Analysis**

Initially, Defendants argue that the settlement agreement is binding and enforceable under California law because Plaintiff had the capacity to read and understand the agreement, and was assisted counsel who further explained the agreement and its legal effect. Additionally, Plaintiff signed the agreement freely and voluntarily, and has never asserted he entered the agreement due to fraud or duress. (Doc. 36-1 at 7-8.) The Court agrees. Although Plaintiff has taken two different positions regarding the validity of the settlement agreement, neither of those positions involves a claim by Plaintiff that he did not understand the agreement, nor that he did not enter into that agreement freely and voluntarily. *See Skrbina v. Fleming Companies, Inc.*, 45 Cal.App.4th 1353, 1366-1367 (1996).

Next, Defendants argue that Plaintiff cannot revoke the settlement agreement pursuant to the OWBPA. On July 18, 2012, in response to email inquiries by Defendants, Plaintiff sent a letter to counsel for Defendants wherein he states: "Pursuant to the Older Workers Benefit Protection Act (OWBPA), Curtis C. Dinwiddie, Plaintiff in the above-referenced civil action, hereby gives notice of his revocation of the Stipulation for Settlement which he executed on July 12, 2012, at JAMS, to resolve this civil action." (Doc. 36-3, Ex. E.) Plaintiff did not explain his position in the July 18 correspondence, nor in any subsequent correspondence.

As explained by the Third District Court of Appeal,

> the OWBPA on its face covers only "right[s] or claim[s] *under this chapter* . . ." (i.e., the ADEA). (29 U.S.C. § 626(f)(1), italics added.) In general, the ADEA (29 U.S.C. § 621 et seq.) bans age discrimination by employers employing more than 20 persons in industries affecting commerce. (*Aalgaard v. Merchants Nat. Bank, Inc.* (1990) 224 Cal.App.3d 674, 693 [274 Cal.Rptr. 81].)
> By its plain terms, 29 United States Code section 626(f0(1) applies only to rights or claims under the ADEA. It does not apply to a waiver of claims based on state law . . ..

*Skrbina v. Fleming Companies, Inc.*, 45 Cal.App.4th at 1367-1368. A review of Plaintiff's SAC reveals that he has not asserted any claims pursuant to the ADEA. (*See* Doc. 25.) Rather than asserting any claims pertaining to discrimination based upon his *age*, Plaintiff asserted state and

federal claims are for *racial* discrimination, retaliation, hostile work environment, failure to prevent harassment and a violation of public policy.  (Doc. 25 at 7-10.)  Like the plaintiff in *Skrbina*, Plaintiff here failed to pursue any rights or claims under the ADEA, and thus, the anti-waiver provisions of the ADEA are inapplicable here.  *Skrbina v. Fleming Companies, Inc.*, at 1368; *see also Nakamoto v. Lockheed Martin Corporation*, 2010 WL 2348634 * 8 (N.D. Cal. June 8, 2010); *Kinghorn v. Citibank, N.A.*, 1999 WL 30534 *3 (N.D. Cal. Jan. 20, 1999). Notably too, Defendants contend that "at the time the parties attended mediation, the statute of limitations for Plaintiff's ADEA claims had already run.  This means the parties had no reason to contemplate the release of such claims in the Settlement Agreement."  (Doc. 36-1 at 8.)  In sum, this Court finds that Plaintiff's references to revocation pursuant to the OWBPA are not applicable here.

Finally, Defendants contend that Plaintiff's assertion that Defendants "revoked the prior Stipulation and Settlement by making a new and different offer" (Doc. 36-3, Ex. H) is erroneous.  This Court agrees.  The email from defense counsel Babak Yousefzadeh to Plaintiff's counsel Kojo Moore dated July 13, 2012, sought to discuss the allocation of the $15,000.00 settlement.  In other words, defense counsel wished to know what portion of the $15,000.00 would be apportioned to attorneys' fees, as well as "wages, subject to deductions, and what amount to personal injury/emotional distress damages not subject to deductions."  (Doc. 36-3, Ex. C.) Plaintiff's characterization of these inquiries as "making a new and different offer" are simply unsupportable.

A revocation is made "at any time before its acceptance is communicated to the proposer, but not afterwards."  Cal. Civ. Code, § 1586; *see also T.M. Cobb Co. v. Superior Court*, 36 Cal.3d 273, 281 (1984).  Because Plaintiff plainly accepted Defendants' proposal on July 12, 2012, Defendants' email of July 13, 2012, was not a revocation.  Further, Defendants' email of July 13, 2012, was neither a new offer  nor a counteroffer.  A counteroffer is one "relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed

in the original offer." Rest.2d, Contracts § 39. Defendants' email, while relating to the same matter as the original offer, did not propose a substitute bargain that differed from the original proposal. As previously noted, Defendants' email merely inquired into the allocation of the $15,000.00 in settlement funds. The original offer remained unchanged, to wit: in exchange for the sum of $15,000.00, Plaintiff agreed to settle all claims and to dismiss this action against Defendants.

In light of the foregoing, this Court will recommend Defendants' motion be granted and that Plaintiff be ordered to perform under the terms of the July 12, 2012, Stipulation For Settlement.

## RECOMMENDATIONS

It is hereby RECOMMENDED that Defendants' Motion To Enforcement Settlement Agreement and Enter Judgment be GRANTED; it is further RECOMMENDED that:

1. The parties' Stipulation For Settlement, executed on July 12, 2012, be found fully binding and enforceable against all parties, and should be enforced pursuant to its terms;

2. Pursuant to the terms of the Stipulation For Settlement, Defendants should be ordered to pay Plaintiff the sum of $15,000.00 as a full, final, and complete compromise of Plaintiff's claims against Defendants;

3. The release provision of the Stipulation For Settlement be found binding and should be enforced against Plaintiff as set forth in the Stipulation For Settlement; and

4. Pursuant to the terms of the Stipulation For Settlement, the Court should enter judgment in favor of Plaintiff in the amount of $15,000.00, and should thereafter dismiss this case with prejudice.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local

1  Rule 304.  Within fourteen days of service of this recommendation, any party may file written
2  objections to these findings and recommendations with the Court and serve a copy on all parties.
3  Such a document should be captioned "Objections to Magistrate Judge's Findings and
4  Recommendations."  The district judge will review the magistrate judge's findings and
5  recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The
6  parties are advised that failure to file objections within the specified time may waive the right to
7  appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:   **December 3, 2012**                             /s/ **Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE

9